

**FILED**

DEC 3 0 2011



DAVID CREWS, CLERK
BY _____
Deputy

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

ACE American Insurance Company, )
as subrogee of SW Gaming, LLC, )
d/b/a Harlow's Casino and Resort )
)
            Plaintiff, )    CASE NO. 4:11CV144-P-V
)
vs. )
)
E. Cornell Malone Corporation )
d/b/a Malone Roofing, LLC )
)
           Defendant. )
_____ )

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff ACE American Insurance Company, as subrogee of SW Gaming,

LLC, d/b/a Harlow's Casino and Resort, hereby files its Complaint against

defendant E. Cornell Malone Corporation, d/b/a Malone Roofing, LLC, alleging

the following:

### JURISDICTION AND VENUE

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §

1332(a)(1). The matter in controversy exceeds the sum of $75,000.00, exclusive of

interest and costs, and there is complete diversity of citizenship between plaintiff

and defendant.

2.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and the property at issue is situated in this judicial district.

## THE PARTIES

3.    Plaintiff ACE American Insurance Company, as subrogee of SW Gaming, LLC, d/b/a Harlow's Casino and Resort ("ACE"), is an insurance corporation incorporated under the laws of the State of Pennsylvania, with its principal place of business at 436 Walnut St., Philadelphia, Pennsylvania 19106.

4.    At all times relevant to this complaint, ACE insured a hotel and casino owned by SW Gaming, LLC, d/b/a Harlow's Casino and Resort ("Harlow's Casino") located at 4520 Highway 82 West, Greenville, Mississippi.

5.    ACE insured Harlow's Casino under a property insurance policy bearing policy number CXD37872805.

6.    Defendant E. Cornell Malone Corporation, d/b/a Malone Roofing, LLC, ("Malone Roofing") is a corporation organized under the laws of the State of Mississippi with its principal place of business at 439 Dory Street in Jackson, Mississippi 39201. Malone Roofing may be served with process via its registered agent, E. Cornell Malone, at 439 Dory Street, Jackson, MS 39201.

7.     At all times relevant to this complaint, Malone Roofing was in the business of performing, among other things, design and installation of roofing systems for high-rise, commercial, and institutional buildings in Mississippi and throughout the Southeast.

## ALLEGATIONS OF FACTS

### Background Facts

8.     On January 1, 2005, Harlow's Casino entered into an "Abbreviated Standard Form of Agreement Between Owner and Architect" with architects known as P. Gerald Foote & Associates and KBA, Incorporated/Architects ("Foote"). Pursuant to this contract, Foote agreed to provide architectural services associated with the construction of a hotel owned by Harlow's Casino located at 4520 Highway 82 West, Greenville, Mississippi ("The Hotel").

9.     On June 28, 2006, Harlow's Casino entered into a "Standard Form of Agreement Between Owner and Construction Manager" with Shaker Construction Group, LLC, ("Shaker"). Pursuant to this contract, Shaker agreed to provide construction management services associated with the construction of The Hotel.

10.     The original project drawings for the construction of The Hotel showed that the roof structure was to be steel framed with a plywood deck; however, a concrete roof deck was ultimately constructed on The Hotel.

11.   The  architectural drawings issued by Foote provided the details for the rear edge of the roof and showed that the roofing material was to be a "MECHANICALLY FASTENED EPDM MEMBRANE ROOF" with "2x FIRE RETARDANT TREATED WOOD BLOCKING."

12.   Defendant Malone Roofing was retained to install the roofing system, including the roof membrane, on The Hotel.

13.   On March 20, 2007, Malone Roofing issued to Shaker, the construction manager, a Change Order Proposal #0763-1 regarding a "New .060 Fully Adhered TPO System" on the roof of The Hotel.

14.   Pursuant to this Change Order Proposal, Malone Roofing proposed, among other things, to (a) "prime existing sloped concrete deck;" (b) "fully adhere a 3" rigid insulation board to existing sloped concrete deck in hot asphalt;" (c) "fully adhere a .060 TPO Single Ply Membrane roof system (white);" (d) "flash penetrations and vertical surfaces with a fully adhered .060 mil TPO (white);" and (e) "provide a manufacturer's 20 year warranty and a contractor's 2 year warranty."

15.   Shaker agreed to Malone Roofing's Change Order Proposal #0763-1 on March 22, 2007, and Harlow's Casino agreed to the Change Order Proposal on April 3, 2007. (A genuine and authentic copy of the Change Order is attached hereto as Exhibit A).

16.     In accordance with the Change Order, Malone Roofing installed a 3" layer of rigid insulation board adhered to the top of the concrete deck on The Hotel. Malone Roofing also installed a flexible Firestone roofing membrane, which was adhered to the top of the rigid insulation.

17.     The installation of the 3" rigid insulation board on top of the existing concrete deck of The Hotel's roof required Malone Roofing to construct and install a "wood nailer" along the rear edge of the roof so that the Firestone roofing membrane could be fastened over top of the newly-installed rigid insulation.

18.     The wood nailer constructed and installed by Malone Roofing was supposed to serve as the substrate to which the Firestone roofing membrane was to be attached at the rear edge of The Hotel.

19.     To construct and install the wood nailer, Malone Roofing used standard 2" x 4" wood studs/boards, stacked one on top of the other, with plywood sheets installed over 2" x 4" wood studs/boards.

20.     Malone Roofing used hand-driven, 12d common nails to affix the wood nailer to the concrete surface of the unfinished roof deck.

21.     Malone Roofing then affixed the Firestone roofing membrane to the built-up wood nailer and finished its installation of the roof system, issuing its guarantee on the as-built roof on January 4, 2008.

22.    In performing its roofing work, Malone Roofing was required to install the roofing membrane in accordance with Firestone's installation instructions and specifications, including those set forth in the "FIRESTONE ULTRAPLY TPO ROOFING SYSTEM APPLICATION GUIDE."

23.    Section 2.04 of this Firestone Application Guide provides under Part D: "Wood nailers must be firmly fastened to the deck or building. Mechanically fasten wood nailers to resist a minimum force of 200 lb/f (890 N) in any direction. Refer to attachment requirements of the roofing system as specified by the project designer if greater than 200 lb/f (890 N)."

24.    Part G of section 2.04 of the Firestone Application Guide further provides: "Make these specifications and details available when nailers are to be installed by others. Work that compromises the integrity of the roof system may jeopardize the roof warranty."

25.    The Firestone TPO Design Guide identifies the type of fasteners that can be used to attach a Firestone roofing membrane to various types of substrates or roof decks.

26.    Table 1.05-1 of the Firestone TPO Design Guide, which is titled "ALLOWABLE FASTENERS AND SUBSTRATE CONFIGURATIONS," provides that the only fasteners approved for structural concrete decks are a

"Heavy-Duty Fastener" and a "Concrete Drive Fastener." Common 12d nails, like those used by Malone Roofing, are not listed in the table as approved fasteners.

27.     The Firestone EPDM Design Guide contains similar provisions for the attachment of nailers.   This guide also requires that a wood nailer attachment system must "resist a minimum force of 200 lb per foot (2.9 N/m) in any direction" and further provides that "Firestone fasteners are required for all roofing applications."

28.     Common 12d nails, like those used by Malone Roofing, are not approved Firestone fasteners.

29.     The standards prescribed by the National Roofing Contractors Association (NRCA), also prohibit the use of common 12d nails to fasten roofing components to a concrete deck. Although the NRCA standards provide that nailers may be cast into a concrete deck, it is not acceptable to use ordinary nails, like those used by Malone Roofing.

30.     By using common 12d nails to attach the wood nailer to the concrete deck on top of The Hotel, Malone Roofing failed to comply with Firestone's installation instructions and specifications, as well as the standards prescribed by the NRCA.

31.     In addition to its failure to comply with the NRCA standards and Firestone's installation instructions and specifications, Malone Roofing also failed

to comply with the applicable building codes, which Malone Roofing had a duty to comply with in performing its roofing work at The Hotel.

32.     At the time Malone Roofing performed its roofing work at The Hotel, the 1997 Standard Building Code (SBC) was in effect in Greenville, Mississippi; however, the project drawings, specifically Drawing S001, provided that the 2003 International Building Code (IBC) was the governing code for the project at The Hotel.

33.     Malone Roofing failed to comply with both the 1997 SBC and the 2003 IBC.

34.     Section 1503.1 of the 1997 SBC, titled "General," states that "[r]oof coverings shall be applied in accordance with this chapter and meet manufacturer's recommendations. Minimum design loads for roofing materials with which all roofing systems must comply, are covered in 1503.3 and 1606."

35.     Section 1503.3 of the 1997 SBC is titled "Wind loads and wind resistance. " Section 1503.3.2 provides that "[r]oof systems with built-up, modified bitumen, fully adhered or mechanically attached single ply, metal panels or other type of membrane roof coverings shall be designed to withstand the appropriate loads prescribed in § 1606."

36.     Section 1606 of the 1997 SBC incorporates by reference the American Society of Civil Engineers Standard 7 ("ASCE 7") for wind speeds. Figure 6-1 of

ASCE 7-95 shows that structures built in Greenville, Mississippi, must be designed to resist a wind speed of 90 miles per hour (3 second gust).

37.    Section 1513.3.1.4 of the 1997 SBC, titled "Mechanical Fastening," requires that a roof's "membrane and the perimeter system shall be mechanically fastened at the perimeter of the roof, around all roof vents, skylights and similar penetrations, and at all membrane terminations.  Mechanical fastening shall be conducted in accordance with manufacturer's requirements."

38.    Similar requirements are specified in the 2003 IBC. Section 1503.1 of the 2003 IBC provides, in relevant part, that "[r]oof coverings shall be designed, installed and maintained in accordance with this code and the approved manufacturer's instructions such that the roof covering shall serve to protect the building or structure."

39.    Section 1504.1 of the 2003 IBC, titled "Wind resistance of roofs" states, in relevant part, that "[r]oof decks and roof coverings shall be designed for wind loads in accordance with Chapter 16 and Sections 1504.2, 1504.3, and 1504.4" Chapter 16 of the 2003 IBC, like the 1997 SBC, incorporates by reference the wind speeds specified in ASCE 7,  which required the roof on The Hotel to be designed and constructed to resist a 90 mph 3 second gust.

40.    In addition to the wind speed loads specified in the 1997 SBC and the 2003 IBC, the project drawings for the construction of The Hotel, specifically

Drawing S001, specified the wind loads for this particular project and required the roof to resist a wind load of "90 MPH PER ASCE 7 (3-SECOND GUST)."

41.     Thus, the project specifications, the 1997 SBC, and the 2003 IBC all required the roof on The Hotel to be designed and constructed to resist a 90 mph 3-second gust.

### The Incident at Issue

42.     On February 24, 2011, a portion of the Firestone roof membrane was lifted from the roof of The Hotel during a rain storm accompanied by high winds.

43.     Meteorological data revealed that the maximum 3 second wind gust at The Hotel was only 70 mph, well below the design wind speed load specified by the project drawings, the 1997 SBC, and the 2003 IBC.

44.     Although the wind speeds at The Hotel on February 24, 2011 were well below the design wind speed load specified by the project drawings, the 1997 SBC, and the 2003 IBC, the membrane roof nevertheless lifted off the roof, allowing rainwater to enter The Hotel.

45.     As a result of the roof failure, a substantial amount of rainwater entered The Hotel on February 24, 2011 and on subsequent dates before the roof could be made water tight.

46.     The roof failure caused damage to the roof itself, as well as severe water damage inside The Hotel.

47.   The roof failure also caused Harlow's Casino to suffer a substantial loss of profits.

## The Investigation Into the Roof Failure

48.   Harlow Casino's insurer, ACE, retained professional engineers and a meteorologist to investigate and evaluate the cause of the roof failure at The Hotel.

49.   This investigation revealed that the roof membrane lifted off the roof of The Hotel because the built-up wood nailer installed by Malone Roofing separated from the concrete deck when subjected to a wind speed that was less than the design wind speed for the project, and less than the code required wind speed.

50.   Once the wood nailer separated from the concrete, the edge of the roofing membrane was exposed to the wind and was pulled back from its original position, resulting in substantial water intrusion into The Hotel.

51.   The separation of the wood nailer from the concrete was caused by Malone Roofing's failure to perform its roofing work in a good and workmanlike manner and its failure to comply with the applicable codes and standards governing its roofing work.

52.   Specifically, the roofing failure and resulting damages were caused by Malone Roofing's improper use of hand-driven 12d common nails to affix the nailer board to the concrete deck; Malone Roofing's failure to install a roof capable

of withstanding three second wind gusts of ninety (90) miles per hour; Malone
Roofing's failure to install a roofing system that was capable of resisting a force of
200 pounds per foot in any direction; Malone Roofing's failure to comply with
Firestone's installation instructions and specifications; Malone Roofing's failure to
comply with the project drawings and specifications; Malone Roofing's failure to
comply with the applicable building codes; Malone Roofing's failure to comply the
NRCA industry standards; and Malone Roofing's failure to perform its work in a
good and workmanlike manner.

**ACE's Subrogation Claim**

53.     As a result of the roof failure, Harlow's Casino submitted a claim to
its insurer, ACE American Insurance Company, seeking reimbursement for the
substantial damages caused by Malone's negligence, code violations, and improper
workmanship.

54.     Pursuant to the terms and conditions of its insurance policy (policy
number CXD37872805), ACE has, as of this date, paid Harlow's Casino at least
$1,000,000.00, and anticipates making additional payments far exceeding
$1,000,000.00.

55.     By virtue of and to the extent of its payments under the insurance
policy, ACE is contractually and equitably subrogated to Harlow's Casino's rights

and causes of action against the parties responsible for the roof failure and the resulting damages.

56.     ACE is entitled to recover from Malone Roofing the full amount of money it will ultimately pay Harlow's Casino in reimbursement for the substantial damages caused by Malone's negligence, code violations, and improper workmanship.

**COUNT I – NEGLIGENCE**

57.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 56 of this complaint as if fully set forth at length herein.

58.     Malone Roofing owed Harlow's a duty to use reasonable care in installing and constructing the new roof over The Hotel, so as to avoid subjecting Harlow's Casino and its property to an unreasonable risk of harm.

59.     Malone Roofing breached its duty of care by engaging in careless and negligent conduct which included, without limitation, one or more of the following negligent acts of commission and/or omission:

(a)     Using hand-driven common nails to affix the nailer board to the  concrete surface of the roof deck;

(b)     Failing to determine the withdrawal capacity of the nails when hand-driven into concrete;

(c)    Failing to install a roof capable of withstanding three second wind gusts of ninety (90) miles per hour, as required by the project specifications and the applicable codes and standards;

(d)    Failing to install a roofing system that was capable of resisting a force of 200 pounds per foot in any direction;

(e)    Failing to comply with Firestone's installation instructions and specifications;

(f)    Failing to comply with the project drawings and specifications;

(g)    Failing to comply with the applicable building codes;

(h)    Failing to comply the NRCA industry standards;

(i)    Failing to properly and adequately inspect its roofing work to ensure that it had been performed in accordance with the applicable specifications, codes, standards, and practices of good workmanship;

(j)    Failing to hire competent employees, agents, servants and/or contractors to perform the construction and installation of the new roofing system;

(k)    Failing to properly and adequately train and supervise its agents, servants, employees, and/or contractors who performed the construction and installation of the new roofing system;

(l)    Failing to properly and adequately perform its work in a good, safe and workmanlike manner;

(m)    Failing to warn Harlow's Casino of the defective roof condition created by Malone Roofing's negligence and improper workmanship, when the defendant knew or should have known that such defects constituted an unreasonable risk of harm to Harlow's Casino and its property;

(n)    Failing to exercise the requisite degree of care and skill under the circumstances;

(o)    Other negligent acts and omissions that may be revealed through further discovery.

60.    As a direct and proximate result of the foregoing negligent acts of commission and/or omission on the part of Defendant Malone Roofing, ACE has, as of this date, suffered damages in excess of $1,000,000.00, and will likely suffer

additional damages well in excess of $1,000,000.00 as a result of defendant's negligence.

**WHEREFORE**, ACE demands that judgment be entered in its favor and against Defendant Malone Roofing, in an amount to be determined at trial, plus interest, the costs of this action, and any and all further relief which this Court deems just and proper under the circumstances.

## COUNT II- NEGLIGENCE PER SE

61.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 56 of this complaint as if fully set forth at length herein.

62.    At all times relevant to this complaint, all of the work, services and products associated with this lawsuit were performed and supplied in Greenville, Mississippi.

63.    The applicable building codes, regulations and/or ordinances adopted in Greenville and the State of Mississippi required all of Malone Roofing's work, services and products performed and supplied herein to conform and comply with all applicable building codes, including, without limitation, the 1997 Standard Building Code (SBC) and the 2003 International Building Code (IBC).

64.    Malone Roofing violated the requirements of the 1997 SBC; specifically, the sections of the 1997 SBC cited in paragraphs 34, 35, 36, and 37 above.

65.    Malone Roofing also violated the requirements of the 2003 IBC; specifically, the sections of the 2003 IBC cited in paragraphs 38 and 39 above.

66.    Malone Roofing violated the 1997 SBC and the 2003 IBC by improperly using hand-driven common nails to affix the wood nailer board to the concrete surface of the roof deck; by failing to install the roof in accordance with Firestone's installation instructions and specifications; by failing to install a roof capable of withstanding three second wind gusts of ninety (90) miles per hour; and by failing to install a roofing system that was capable of resisting a force of 200 pounds per foot in any direction.

67.    Harlow's Casino is within the class of persons and entities protected by the 1997 SBC  and the 2003 IBC.

68.    The type of harm suffered by Harlow's Casino is the type of harm sought to be prevented by the 1997 SBC and the 2003 IBC.

69.    Malone Roofing's violation of the 1997 SBC and the 2003 IBC proximately caused plaintiff's damages as claimed herein.

70.    Accordingly, Malone Roofing is negligent per se without proof of its lack of due care.

**WHEREFORE**, ACE demands that Defendant Malone Roofing be held negligent per se and that judgment be entered in its favor and against Defendant Malone Roofing, in an amount to be determined at trial, plus interest, the costs of

this action, and any and all further relief which this Court deems just and proper under the circumstances.

Submitted this 29th day of December, 2011.

Charles S. Tindall, III
Mississippi Bar No. 8223
Heath S. Douglas
Mississippi Bar No. 102313

Of Counsel:

**LAKE TINDALL, LLP**
127 S. Poplar Street
P. O. Box 918
Greenville, MS  38702-0918
Telephone:  (662) 378-2121
Facsimile:   (662) 378-2183
Email:  ctindalliii@ltindall.com
Email:  hdouglas@ltindall.com

Of Counsel:

Albert G. Dugan
**COZEN O'CONNOR**
SunTrust Plaza, Suite 2200
303 Peachtree Street NE
Atlanta, GA  30308
Telephone:  (404) 572-2025
Facsimile:  (877) 260-6235