# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

| | | |
|---|---|---|
| ACE American Insurance Company, | ) | |
| as subrogee of SW Gaming, LLC, | ) | |
| d/b/a Harlow's Casino and Resort | ) | |
| and Churchill Downs, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION FILE NO.: |
| | ) | 4:11-CV-00146-WAP-JMV |
| E. Cornell Malone Corporation | ) | |
| d/b/a Malone Roofing, LLC; Paul | ) | |
| Gerald Foote, in his individual capacity; | ) | |
| Paul Gerald Foote d/b/a P. Gerald | ) | |
| Foote & Associates; KBA Incorporated; | ) | |
| and Advanced Roofing Systems, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff ACE American Insurance Company, as subrogee of SW Gaming, LLC, d/b/a Harlow's Casino and Resort and Churchill Downs, Inc., hereby files its First Amended Complaint against defendant E. Cornell Malone Corporation, d/b/a Malone Roofing, LLC; Paul Gerald Foote, in his individual capacity; Paul Gerald Foote d/b/a P. Gerald Foote & Associates; KBA Incorporated; and Advanced Roofing Company, alleging the following:

## JURISDICTION AND VENUE

1.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(a)(1). The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between plaintiff and defendants.

2.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and the property at issue is situated in this judicial district.

## THE PARTIES

3.  Plaintiff ACE American Insurance Company, as subrogee of SW Gaming, LLC, d/b/a Harlow's Casino and Resort and Churchill Downs, Inc. ("ACE"), is an insurance corporation incorporated under the laws of the State of Pennsylvania, with its principal place of business at 436 Walnut St., Philadelphia, Pennsylvania 19106.

4.  At all times relevant to this complaint, ACE insured a hotel and casino owned by SW Gaming, LLC, d/b/a Harlow's Casino and Resort ("Harlow's Casino") located at 4520 Highway 82 West, Greenville, Mississippi.

5.  ACE insured Harlow's Casino, as well as Churchill Downs, Inc., under a property insurance policy bearing policy number CXD37872805.

- 2 -

6.     Defendant E. Cornell Malone Corporation, d/b/a Malone Roofing, LLC, ("Malone Roofing") is a corporation organized under the laws of the State of Mississippi with its principal place of business at 439 Dory Street in Jackson, Mississippi 39201.  Malone Roofing may be served with process via its registered agent, E. Cornell Malone, at 439 Dory Street, Jackson, MS 39201.

7.     At all times relevant to this complaint, Malone Roofing was in the business of performing, among other things, design and installation of roofing systems for high-rise, commercial, and institutional buildings in Mississippi and throughout the Southeast.

8.     Defendant Paul Gerald Foote ("Paul Foote") is a natural person and, upon information and belief,  a resident and citizen of the State of Ohio.

9.     Paul Foote is a licensed professional architect in the State of Mississippi and owned and operated an architectural firm known as P. Gerald Foote & Associates.

10.     At all times relevant to this complaint, Defendant P. Gerald Foote & Associates ("Foote and Associates") was, upon information and belief, a sole proprietorship or other business entity organized under the laws of the State of Ohio, with its principal place of business at 9467 Montgomery Road, Cincinnati, Ohio  45242.  Foote and Associates may be served with process by perfecting service on Paul Gerald Foote at 9467 Montgomery Road, Cincinnati, Ohio 45242.

11.    At all times relevant to the complaint, Foote and Associates was an architectural firm which provided design and architectural services for commercial buildings, including buildings in Mississippi.

12.    Defendant KBA Incorporated ("KBA") is a corporation organized under the laws of the State of Ohio, with its principal place of business at 4357 Ferguson Drive, Suite 200, Cincinnati, Ohio 45245. KBA may be served with process via its registered agent, Larry M. Keith, 400 Technecenter Drive, Milford, Ohio 45150.

13.    At all times relevant to this complaint, Defendant KBA was an architectural firm which provided design and architectural services for commercial buildings, including buildings in Mississippi.

14.    At all times relevant to this complaint, Defendant Advanced Roofing Systems ("Advanced Roofing") was, upon information and belief, a corporation organized under the laws of the State of Arkansas, with its principal place of business at 285 Westinghouse Drive, Hot Springs, Arkansas 71901. Advanced Roofing may be served with process by perfecting service on its president, Doug Riley, at 285 Westinghouse Drive, Hot Springs, Arkansas 71901.

15.    At all times relevant to this complaint, Advanced Roofing was in the business of performing, among other things, the repair and installation of roofing systems for commercial buildings, including buildings in Mississippi.

## ALLEGATIONS OF FACTS

### Background Facts

16.     This lawsuit arises from water damages resulting from a roof failure that occurred on February 24, 2011, and a subsequent roof failure that occurred during the repair of the initial roof failure, at a hotel owned and operated by Harlow's Casino at 4520 Highway 82 West, Greenville, Mississippi ("The Hotel").

17.     On January 1, 2005, Harlow's Casino entered into an "Abbreviated Standard Form of Agreement Between Owner and Architect" with architects Foote & Associates and KBA.  Pursuant to this contract, Paul Foote, Foote & Associates, and KBA agreed to provide design and architectural services associated with the construction of The Hotel owned by Harlow's Casino located at 4520 Highway 82 West, Greenville, Mississippi.

18.     On June 28, 2006, Harlow's Casino entered into a "Standard Form of Agreement Between Owner and Construction Manager" with Shaker Construction Group, LLC, ("Shaker"). Pursuant to this contract, Shaker agreed to provide construction management services associated with the construction of The Hotel.

19.     The original project drawings for the construction of The Hotel showed that the roof structure was to be steel framed with a plywood deck; however, a concrete roof deck was ultimately constructed on The Hotel.

20.    The architectural drawings issued by Paul Foote, Foote & Associates, and KBA showed that the roofing material was to be a "MECHANICALLY FASTENED EPDM MEMBRANE ROOF" with "2x FIRE RETARDANT TREATED WOOD BLOCKING."

21.    Defendant Malone Roofing was retained to install the roofing system, including the roof membrane,  on The Hotel.

22.    On March 20, 2007, Malone Roofing issued to Shaker, the construction manager, a Change Order Proposal #0763-1 regarding a "New .060 Fully Adhered TPO System" on the roof of The Hotel.

23.    Pursuant to this Change Order Proposal, Malone Roofing proposed, among other things, to (a) "prime existing sloped concrete deck;" (b) "fully adhere a 3" rigid insulation board to existing sloped concrete deck in hot asphalt;" (c) "fully adhere a .060 TPO Single Ply Membrane roof system (white);" (d) "flash penetrations and vertical surfaces with a fully adhered .060 mil TPO (white);" and (e) "provide a manufacturer's 20 year warranty and a contractor's 2 year warranty."

24.    Shaker agreed to Malone Roofing's Change Order Proposal #0763-1 on March 22, 2007, and Harlow's Casino agreed to the Change Order Proposal on April 3, 2007.  (A genuine and authentic copy of the Change Order is attached hereto as Exhibit A).

- 6 -

25.     In accordance with the Change Order, Malone Roofing installed a 3" layer of rigid insulation board adhered to the top of the concrete deck on The Hotel. Malone Roofing also installed a flexible Firestone roofing membrane, which was adhered to the top of the rigid insulation.

26.     The installation of the 3" rigid insulation board on top of the existing concrete deck of The Hotel's roof required the construction and installation of a "wood nailer" along the rear edge of the roof so that the Firestone roofing membrane could be fastened over top of the newly-installed rigid insulation.

27.     The wood nailer was supposed to serve as the substrate to which the Firestone roofing membrane was to be attached at the rear edge of The Hotel.

**Construction of the Wood Nailer and Membrane Roofing System
and the Specifications, Standards, and Codes Applicable to the
<u>Construction of the Wood Nailer and Membrane Roofing System</u>**

28.     The wood nailer was constructed and installed by using standard 2" x 4" wood studs/boards, stacked one on top of the other, with plywood sheets installed over the 2" x 4" wood studs/boards.

29.     Hand-driven, 12d common nails were used to affix the wood nailer to the concrete surface of the unfinished roof deck.

30.     Upon information and belief, the wood nailer was constructed and installed by Malone Roofing or another person or entity who is presently unknown.

31. As more fully set forth herein, to the extent Malone Roofing constructed and installed the wood nailer, it is liable for improperly constructing and installing the wood nailer because (a) it failed to comply with Firestone's installation instructions and specifications; (b) it failed to comply with the standards prescribed by the National Roofing Contractors Association (NRCA); (c) it failed to comply with the 1997 Standard Building Code (SBC) and the 2003 International Building Code (IBC); (d) it failed to ensure that the wood nailer was properly installed and fastened to the concrete roof deck so that the membrane roof would not lift off The Hotel during foreseeable rainstorm and wind conditions; (e) it failed to ensure the soundness and structural integrity of the wood nailer in accordance with Firestone's instructions and specifications; (f) it failed to ensure the wood nailer attachment system was capable of resisting "a minimum force of 200 lb per foot (2.9 N/m) in any direction;" and (g) it failed to install a roof capable of withstanding a three second wind gust of ninety (90) miles per hour, as required by the project's specifications and the applicable codes and standards.

32. As more fully set forth herein, to the extent Malone Roofing did not construct or install the wood nailer, it is still liable for the roof failure because (a) it failed to ensure that the wood nailer was properly installed and fastened to the concrete roof deck so that the membrane roof would not lift off The Hotel during foreseeable rainstorm and wind conditions; (b) it failed to ensure the soundness

and structural integrity of the wood nailer in accordance with Firestone's instructions and specifications; (c) it failed to provide the persons who installed the wood nailer with Firestone's instructions and specifications for fastening the wood nailer to the roof deck; (d) it failed to comply with the 1997 SBC and the 2003 IBC; (e) it failed to ensure that the wood nailer attachment system was capable of resisting "a minimum force of 200 lb per foot (2.9 N/m) in any direction," and (f) it failed to install a roof capable of withstanding a three second wind gust of ninety (90) miles per hour, as required by the project's specifications and the applicable codes and standards.

33.    After the wood nailer had been installed, Malone Roofing affixed the Firestone roofing membrane to the built-up wood nailer and finished its installation of the roof system, issuing its guarantee on the as-built roof on January 4, 2008.

34.    In performing its roofing work, Malone Roofing was required to install the roofing membrane in accordance with Firestone's installation instructions and specifications, including those set forth in the "FIRESTONE ULTRAPLY TPO ROOFING SYSTEM APPLICATION GUIDE." ("The Firestone TPO Application Guide").

35.    Section 2.04 of this Firestone TPO Application Guide provides under Part D: "Wood nailers must be firmly fastened to the deck or building. Mechanically fasten wood nailers to resist a minimum force of 200 lb/f (890 N) in

any direction. Refer to attachment requirements of the roofing system as specified by the project designer if greater than 200 lb/f (890 N)."

36.     Part G of section 2.04 of the Firestone TPO Application Guide further provides: "Make these specifications and details available when nailers are to be installed by others. Work that compromises the integrity of the roof system may jeopardize the roof warranty." In other words, part G of Section 2.04 of the Firestone TPO Application Guide provides that the roofing contractor who installs the roofing membrane, but does not install the wood nailer, must provide the Firestone specifications and details to the party that does install the wood nailer.

37.     The Firestone TPO Application Guide further provides: "If soundness and integrity of the existing roof system cannot be verified, good roofing practice requires a complete tear-off to the structural deck."  This same instruction is also contained in the Firestone EPDM Design Guide.

38.     Malone Roofing failed to provide Firestone's specifications and details to the installer of the wood nailer.

39.     In addition, Malone Roofing failed to perform "a complete tear-off to the structural deck" to verify "the soundness and integrity" of the wood nailer as specified in both the Firestone TPO Application Guide and the Firestone EPDM Design Guide.

40.     The Firestone TPO Design Guide identifies the type of fasteners that can be used to attach a Firestone roofing membrane to various types of substrates or roof decks.

41.     Table 1.05-1 of the Firestone TPO Design Guide, which is titled "ALLOWABLE FASTENERS AND SUBSTRATE CONFIGURATIONS," provides that the only fasteners approved for structural concrete decks are a "Heavy-Duty Fastener" and a "Concrete Drive Fastener." Hand-driven common 12d nails, like those used to install the wood nailer at The Hotel, are not listed in the table as approved fasteners.

42.     The Firestone EPDM Design Guide contains similar provisions for the attachment of nailers.  This guide also requires that a wood nailer attachment system must "resist a minimum force of 200 lb per foot (2.9 N/m) in any direction" and further provides that "Firestone fasteners are required for all roofing applications."

43.     Hand-driven common 12d nails, like those used to install the wood nailer at The Hotel, are not approved Firestone fasteners.

44.     The standards prescribed by the National Roofing Contractors Association (NRCA) also prohibit the use of common 12d nails to fasten roofing components to a concrete deck.  Although the NRCA standards provide that nailers

- 11 -

may be cast into a concrete deck, it is not acceptable to use ordinary nails, like those used to install the wood nailer at The Hotel.

45. The use of common 12d nails to attach the wood nailer to the concrete deck on top of The Hotel violated Firestone's installation instructions and specifications, as well as the standards prescribed by the NRCA.

46. Malone Roofing should have known, based on a reasonable inspection of the wood nailer, that the installation of the wood nailer violated Firestone's installation instructions and specifications, as well as the standards prescribed by the NRCA. Accordingly, Malone Roofing should have corrected the installation of the wood nailer so that it complied with Firestone's installation instructions and specifications, as well as the standards prescribed by the NRCA. Malone Roofing, however, failed to do so.

47. In addition to its failure to ensure that the installation of the wood nailer complied with the NRCA standards and Firestone's installation instructions and specifications, Malone Roofing also failed to comply with the applicable building codes, which Malone Roofing had a duty to comply with in performing its roofing work at The Hotel.

48. At the time Malone Roofing performed its roofing work at The Hotel, the 1997 Standard Building Code (SBC) was in effect in Greenville, Mississippi; however, the project drawings, specifically Drawing S001, provided that the 2003

International Building Code (IBC) was the governing code for the project at The Hotel.

49.     Malone Roofing failed to comply with both the 1997 SBC and the 2003 IBC.

50.     Section 1503.1 of the 1997 SBC, titled "General," states that "[r]oof coverings shall be applied in accordance with this chapter and meet manufacturer's recommendations. Minimum design loads for roofing materials with which all roofing systems must comply, are covered in 1503.3 and 1606."

51.     Section 1503.3 of the 1997 SBC is titled "Wind loads and wind resistance. " Section 1503.3.2 provides that "[r]oof systems with built-up, modified bitumen, fully adhered or mechanically attached single ply, metal panels or other type of membrane roof coverings shall be designed to withstand the appropriate loads prescribed in § 1606."

52.     Section 1606 of the 1997 SBC incorporates by reference the American Society of Civil Engineers Standard 7 ("ASCE 7") for wind speeds. Figure 6-1 of ASCE 7-95 shows that structures built in Greenville, Mississippi, must be designed to resist a wind speed of 90 miles per hour (3 second gust).

53.     Section 1513.3.1.4 of the 1997 SBC, titled "Mechanical Fastening," requires that a roof's "membrane and the perimeter system shall be mechanically fastened at the perimeter of the roof, around all roof vents, skylights and similar

penetrations, and at all membrane terminations. Mechanical fastening shall be conducted in accordance with manufacturer's requirements."

54. Similar requirements are specified in the 2003 IBC. Section 1503.1 of the 2003 IBC provides, in relevant part, that "[r]oof coverings shall be designed, installed and maintained in accordance with this code and the approved manufacturer's instructions such that the roof covering shall serve to protect the building or structure."

55. Section 1504.1 of the 2003 IBC, titled "Wind resistance of roofs" states, in relevant part, that "[r]oof decks and roof coverings shall be designed for wind loads in accordance with Chapter 16 and Sections 1504.2, 1504.3, and 1504.4." Chapter 16 of the 2003 IBC, like the 1997 SBC, incorporates by reference the wind speeds specified in ASCE 7, which required the roof on The Hotel to be designed and constructed to resist a 90 mph 3 second gust.

56. In addition to the wind speed loads specified in the 1997 SBC and the 2003 IBC, the project drawings for the construction of The Hotel, specifically Drawing S001, specified the wind loads for this particular project required the roof to resist a wind load of "90 MPH PER ASCE 7 (3-SECOND GUST)."

57. Thus, the project specifications, the 1997 SBC, and the 2003 IBC all required the roof on The Hotel to be designed and constructed to resist a 90 mph 3-second gust.

- 14 -

**The Design Work Performed by Paul Foote, Foote & Associates and KBA**

58.     Pursuant to paragraph 2.3.1 of their contract with Harlow's Casino, Paul Foote, Foote & Associates, and KBA (hereinafter referred to as the Architect Defendants) were required to "prepare, for approval by the Owner, the Design Development Documents consisting of drawings and other documents to fix and describe the size and character of the Project as to architectural, structural, mechanical and electrical systems, materials and such other elements as may be appropriate."

59.     Pursuant to paragraph 2.4.1 of their contract with Harlow's Casino, the Architect Defendants were required to "prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail all requirements for the construction of the Project."

60.     Paragraph 2.6.12 of the contract between Harlow's Casino and the Architect Defendants further provides:  "If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Architect shall specify appropriate performance and design criteria that such services must satisfy."

61.     Article 11.5.1 of the contract between Harlow's Casino and the Architect Defendants further provides:  "Construction administration shall be

- 15 -

additional service per article 12 and shall extend through the duration of construction."

62.    Pursuant to Article 12 of the contract between Harlow's Casino and the Architect Defendants, the Architect Defendants were required to "visit the construction site at appropriate intervals to observe that construction is in accordance with the contract documents and for field design consultation with the owner."

63.    In accordance with the standard of care applicable to architects in Mississippi, the Architect Defendants were also required to follow the standards prescribed by the NRCA in designing the roofing system at The Hotel.

64.    Section 2.6.4 of Volume I of the NRCA Roofing and Waterproofing Manual states: "Designers should carefully consider mechanically fastening insulation boards directly to concrete roof decks because of the possibility of frequent fastener holes aligning and potentially weakening the deck.  Predrilling and fastening operations may damage or impair a concrete deck's long-term performance.  NRCA urges designers to consider whether mechanical attachments are desirable, taking into account the deck's long-term integrity."

65.    The NRCA Roofing and Waterproofing Manual also includes a Volume titled "Construction Details."  The introduction contains a section titled "Wood Nailers and Blocking," which provides, in relevant part:

> To provide an adequate base, nailers should be securely attached to a roof deck, wall and/or structural framing. *In the design of specific details for a project, a designer should describe and clearly indicate the manner in which wood nailers and/or blocking should be incorporated into construction detail. A designer should specify the means of attachment, as well as the fastening schedule for all nailers and blocking.*[emphasis added].

66.    The design drawings prepared by the Architect Defendants for The Hotel showed the nailers, but they did not specify the means of attachment of the nailers to the roof deck. The lack of such details constitutes a design defect that contributed to the initial roof failure that occurred at The Hotel on February 24, 2011.

67.    The Firestone EPDM Design Guide also provides that the designer should specify the attachment of the nailers. This Design Guide states: "The building owner or his design professional must specify a wood nailer attachment system that will resist a minimum force of 200 lb. per foot (2.9 N/m) in any direction." The design drawings prepared by the Architect Defendants lack such details and did not conform with the manufacturer's requirements, and constituted a design defect that contributed to the initial roof failure that occurred at The Hotel on February 24, 2011.

## The Initial Roof Failure on February 24, 2011

68.    On February 24, 2011, a portion of the Firestone roof membrane was lifted from the roof of The Hotel during a rain storm accompanied by high winds.

- 17 -

69. Meteorological data revealed that the maximum 3 second wind gust at The Hotel was only 70 mph, well below the design wind speed load specified by the project drawings, the 1997 SBC, and the 2003 IBC.

70. Although the wind speeds at The Hotel on February 24, 2011 were well below the design wind speed load specified by the project drawings, the 1997 SBC, and the 2003 IBC, the membrane roof nevertheless lifted off the roof, allowing rainwater to enter The Hotel.

71. As a result of the roof failure, a substantial amount of rainwater entered The Hotel on February 24, 2011 and on subsequent dates before the roof could be made water tight.

72. The roof failure caused damage to the roof itself, as well as severe water damage to The Hotel and other personal property in The Hotel.

73. The roof failure also caused Harlow's Casino to suffer a substantial loss of profits.

### The Investigation Into the Initial Roof Failure on February 24, 2011

74. Harlow Casino's insurer, ACE, retained professional engineers and a meteorologist to investigate and evaluate the cause of the initial roof failure at The Hotel.

75. This investigation revealed that the roof membrane lifted off the roof of The Hotel because the built-up wood nailer separated from the concrete deck

when subjected to a wind speed that was less than the design wind speed for the project, and less than the code required wind speed.

76.    Once the wood nailer separated from the concrete, the edge of the roofing membrane was exposed to the wind and was pulled back from its original position, resulting in substantial water intrusion into The Hotel.

77.    The separation of the wood nailer from the concrete was caused by Malone Roofing's failure to perform its roofing work in a good and workmanlike manner and its failure to comply with the applicable codes and standards governing its roofing work.

78.    Specifically, the roof failure and resulting damages were caused by (a) Malone Roofing's failure to comply with Firestone's installation instructions and specifications; (b) its failure to comply with the standards prescribed by the National Roofing Contractors Association (NRCA); (c) its failure to comply with the 1997 SBC and the 2003 IBC; (d) its failure to ensure that the wood nailer was properly installed and fastened to the concrete roof deck so that the membrane roof would not lift off The Hotel during foreseeable rainstorm and wind conditions; (e) its failure to ensure the soundness and structural integrity of the wood nailer in accordance with Firestone's instructions and specifications; (f) its failure to provide the persons who installed the wood nailer with Firestone's instructions and specifications for fastening the wood nailer to the roof deck; (g) its failure to

ensure the wood nailer attachment system was capable of resisting "a minimum force of 200 lb per foot (2.9 N/m) in any direction;" and/or (h) its failure to install a roof capable of withstanding a three second wind gust of ninety (90) miles per hour, as required by the project's specifications and the applicable codes and standards.

79.   As a direct and proximate result of Malone Roofing's improper workmanship and failure to comply with the applicable codes and standards, Harlow's Casino suffered substantial property damages, as well as a substantial loss of profits.

**The Work Performed by Advanced Roofing and the Subsequent Roof Failure**

80.   After the initial roof failure that occurred at The Hotel on February 24, 2011, Harlow's Casino hired Advanced Roofing to repair and replace a new roofing membrane system on The Hotel.

81.   Harlow's Casino hired Advanced Roofing pursuant to an oral agreement to repair and replace a new roofing membrane on The Hotel.

82.   Pursuant to this oral contract, Advanced Roofing had an implied duty to perform its roofing work in a skillful, good and workmanlike manner.

83.   While it was in the process of repairing and replacing the roof system that had originally been installed by Malone Roofing, Advanced Roofing improperly installed the replacement roofing membrane, failed to make the roofing

membrane water tight, and untimely removed the roofing membrane, thereby allowing additional rain water to enter The Hotel and damage other portions of The Hotel, which had not been damaged by the initial roof failure. Most of the damage to The Hotel and its personal property, however, occurred as a result of the initial roof failure on February 24, 2011.

84.     As a direct and proximate result of Advanced Roofing's failure to perform its work in a skillful, good and workmanlike manner, ACE's insureds suffered substantial property damages, as well as a loss of profits.

**ACE's Subrogation Claim**

85.     As a result of the roof failures, Harlow's Casino submitted a claim to its insurer, ACE American Insurance Company, seeking reimbursement for the substantial damages caused by the Defendants' negligence, code violations, and improper workmanship.

86.     Pursuant to the terms and conditions of its insurance policy (policy number CXD37872805), ACE has, as of this date, paid Harlow's Casino at least $3,700,000.00, and anticipates making additional payments far exceeding $3,700,000.00.

87.     By virtue of and to the extent of its payments under the insurance policy, ACE is contractually and equitably subrogated to Harlow's Casino's and

Churchill Downs rights and causes of action against the parties responsible for the roof failure and the resulting damages.

88.     ACE is entitled to recover from the Defendants the full amount of money it will ultimately pay Harlow's Casino and/or Churchill Downs in reimbursement for the substantial damages caused by the Defendants' negligence, code violations, and improper workmanship.

### COUNT I – NEGLIGENCE AGAINST MALONE ROOFING

89.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 88 of this complaint as if fully set forth at length herein.

90.     Malone Roofing owed Harlow's Casino a duty to use reasonable care in installing and constructing the new roof over The Hotel, so as to avoid subjecting Harlow's Casino and its property to an unreasonable risk of harm.

91.     Malone Roofing breached its duty of care by engaging in careless and negligent conduct which included, without limitation, one or more of the following negligent acts of commission and/or omission:

        (a)     Failing to comply with Firestone's installation instructions and specifications;

        (b)     Failing to comply with the standards prescribed by the National Roofing Contractors Association (NRCA);

        (c)     Failing to comply with the 1997 SBC and the 2003 IBC;

(d)     Failing to ensure that the wood nailer was properly installed and fastened to the concrete roof deck so that the membrane roof would not lift off The Hotel during foreseeable rainstorm and wind conditions;

(e)     Failing to ensure the soundness and structural integrity of the wood nailer in accordance with Firestone's instructions and specifications;

(f)     Failing to provide the persons who installed the wood nailer with Firestone's instructions and specifications for fastening the wood nailer to the roof deck;

(g)     Failing to ensure the wood nailer attachment system was capable of resisting "a minimum force of 200 lb per foot (2.9 N/m) in any direction;"

(h)     Failing to install a roof capable of withstanding a three second wind gust of ninety (90) miles per hour, as required by the project's specifications and the applicable codes and standards.

(i)     Failing to properly and adequately inspect its roofing work to ensure that it had been performed in accordance

with the applicable specifications, codes, standards, and practices of good workmanship;

(j)   Failing to hire competent employees, agents, servants and/or contractors to perform the construction and installation of the new roofing system;

(k)   Failing to properly and adequately train and supervise its agents, servants, employees, and/or contractors who performed the construction and installation of the new roofing system;

(l)   Failing to properly and adequately perform its work in a good, safe and workmanlike manner;

(m)   Failing to warn Harlow's Casino of the defective roof condition created by Malone Roofing's negligence and improper workmanship, when the defendant knew or should have known that such defects constituted an unreasonable risk of harm to Harlow's Casino and its property;

(n)   Failing to exercise the requisite degree of care and skill under the circumstances; and

(o)     Other negligent acts and omissions that may be revealed
through further discovery.

92.     As a direct and proximate result of the foregoing negligent acts of commission and/or omission on the part of Defendant Malone Roofing, ACE and its insureds have, as of this date, suffered damages in excess of $3,700,000.00, and will likely suffer additional damages well in excess of $3,700,000.00 as a result of defendant's negligence.

**WHEREFORE**, ACE demands that judgment be entered in its favor and against Defendant Malone Roofing, in an amount to be determined at trial, plus interest, the costs of this action, and any and all further relief which this Court deems just and proper under the circumstances.

## COUNT II - NEGLIGENCE PER SE AGAINST MALONE ROOFING

93.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 88 of this complaint as if fully set forth at length herein.

94.     At all times relevant to this complaint, all of the work, services and products associated with this lawsuit were performed and supplied in Greenville, Mississippi.

95.     The applicable building codes, regulations and/or ordinances adopted in Greenville and the State of Mississippi required all of Malone Roofing's work, services and products performed and supplied herein to conform and comply with

all applicable building codes, including, without limitation, the 1997 Standard Building Code (SBC) and the 2003 International Building Code (IBC).

96.    Malone Roofing violated the requirements of the 1997 SBC; specifically, the sections of the 1997 SBC cited in paragraphs 50, 51, 52, and 53 above.

97.    Malone Roofing also violated the requirements of the 2003 IBC; specifically, the sections of the 2003 IBC cited in paragraphs 54 and 55 above.

98.    Malone Roofing violated the 1997 SBC and the 2003 IBC by failing to, among other things, ensure the soundness and integrity of the wood nailer in accordance with Firestone's installations and specifications, by failing to install the roof in accordance with Firestone's installation instructions and specifications; by failing to install a roof capable of withstanding three second wind gusts of ninety (90) miles per hour; and by failing to install a roofing system that was capable of resisting a force of 200 pounds per foot in any direction.

99.    Harlow's Casino is within the class of persons and entities protected by the 1997 SBC and the 2003 IBC.

100.   The type of harm suffered by Harlow's Casino is the type of harm sought to be prevented by the 1997 SBC and the 2003 IBC.

101.   Malone Roofing's violation of the 1997 SBC and the 2003 IBC proximately caused plaintiff's damages as claimed herein.

102. Accordingly, Malone Roofing is negligent per se without proof of its lack of due care.

**WHEREFORE**, ACE demands that Defendant Malone Roofing be held negligent per se and that judgment be entered in its favor and against Defendant Malone Roofing, in an amount to be determined at trial, plus interest, the costs of this action, and any and all further relief which this Court deems just and proper under the circumstances.

## COUNT III – NEGLIGENCE AGAINST THE ARCHITECT DEFENDANTS

103. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 88 of this complaint as if fully set forth at length herein.

104. The Architect Defendants owed Harlow's Casino a duty to use reasonable care in designing the new roof over The Hotel, so as to avoid subjecting Harlow's Casino and its property to an unreasonable risk of harm.

105. The Architect Defendants breached their duty of care by engaging in careless and negligent conduct which included, without limitation, one or more of the following negligent acts of commission and/or omissions:

> (a) Failing to provide design and construction drawings and specifications setting forth in detail all requirements for the construction of the roof over The Hotel;

(b)     Failing to specify appropriate performance and design criteria for the roof over The Hotel;

(c)     Failing to describe and clearly indicate in their design and construction drawings the manner in which the wood nailer should be incorporated into the construction of the roof over The Hotel;

(d)     Failing to specify the means of attachment of the wood nailer, as well as the fastening schedule for all nailers;

(e)     Failing to specify in their design and construction drawings a wood nailer attachment system that would resist a minimum force of 200 lb. per foot in any direction.

106.   As a direct and proximate result of the foregoing negligent acts of commission and/or omission on the part of the Architect Defendants, ACE and its insureds have, as of this date, suffered damages in excess of $3,700,000.00, and will likely suffer additional damages well in excess of $3,700,000.00 as the result of the Architect Defendants' negligence.

**WHEREFORE,** ACE demands that judgment be entered in its favor and against the Architect Defendants, in an amount to be determined at trial, plus

interest, the costs of this action, and any and all further relief which this Court deems just and proper under the circumstances.

## COUNT IV – BREACH OF CONTRACT AGAINST THE ARCHITECT DEFENDANTS

107. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 88 of this complaint as if fully set forth at length herein

108. At all times relevant to this complaint, there was a valid and enforceable written contract between Harlow's Casino and the Architect Defendants, pursuant to which the Architect Defendants agreed to provide design and architectural services associated with the construction of The Hotel owned by Harlow's Casino located at 4520 Highway 82 West, Greenville, Mississippi.

109. The Architect Defendants breached their contract with Harlow's Casino by failing to properly comply with the contractual provisions enumerated in paragraphs 58 through 62 above, and by committing the acts of commission and/or omission enumerated in paragraph 105 above.

110. As a direct and proximate result of the Architect Defendants' breach of contract, ACE and its insureds have, as of this date, suffered substantial damages and will likely suffer additional damages as a result of the Architec Defendants' breach of contract.

**WHEREFORE,** ACE demands that judgment be entered in its favor and against the Architect Defendants, in an amount to be determined at trial, plus

interest, the costs of this action, and any and all further relief which this Court deems just and proper under the circumstances.

## COUNT V – NEGLIGENCE AGAINST ADVANCED ROOFING

111.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 88 of this complaint as if fully set forth at length herein.

112.  Advanced Roofing owed Harlow's Casino a duty to use reasonable care in repairing and replacing a new roofing membrane system on The Hotel after the initial roof failure that occurred on February 24, 2011.

113.  Advanced Roofing breached its duty of care by engaging in careless and negligent conduct which included, without limitation, one or more of the following negligent acts of commission and/or omission:

(a)    Failing to comply with the roofing manufacturer's instructions and specifications;

(b)    Failing to comply with the standards prescribed by the National Roofing Contractors Association (NRCA);

(c)    Failing to comply with the 1997 SBC and the 2003 IBC;

(d)    Failing to properly install the replacement roofing membrane over The Hotel;

(e)    Failing to make the replacement roofing membrane water tight;

(f)     Untimely removing the roofing membrane from The Hotel, thereby allowing additional rain water to enter The Hotel and damage other portions of The Hotel, which had not been damaged by the initial roof failure;

(g)     Failing to perform its work in a skillful, good and workmanlike manner;

(h)     Failing to install a roof capable of withstanding a three second wind gust of ninety (90) mph, as required by the project's specifications and the applicable codes and standards;

(i)     Failing to properly and adequately inspect its roofing work to ensure that it had been performed in accordance with the applicable specifications, codes, standards, and practices of good workmanship;

(j)     Failing to hire competent employees, agents, servants and/or contractors to repair and replace the new roofing membrane over The Hotel;

(k)     Failing to properly and adequately train and supervise its agents, servants, employees, and/or contractors who

installed the replacement roofing membrane over The Hotel;

(l)     Failing to warn Harlow's Casino of the defective roof condition created by Advanced Roofing's negligence and improper workmanship, when Advanced Roofing knew or should have known that such defects constituted an unreasonable risk of harm to Harlow's Casino and its property;

(m)     Failing to exercise the requisite degree of care and skill under the circumstances; and

(n)     Other negligent acts and omissions that may be revealed through further discovery.

114.     As a direct and proximate result of the foregoing negligent acts of commission and/or omission on the part of defendant Advanced Roofing, ACE and its insureds have, as of this date, suffered substantial damages and will likely suffer additional damages as the result of Advanced Roofing's negligence.

**WHEREFORE,** ACE demands that judgment be entered in its favor and against Defendant Advanced Roofing, in an amount to be determined at trial, plus interest, the costs of this action, and any and all further relief which this Court deems just and proper under the circumstances.

## <u>COUNT VI – NEGLIGENCE PER SE AGAINST ADVANCED ROOFING</u>

115.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 88 of this complaint as if fully set forth at length herein.

116.   At all times relevant to this complaint, all of the work, services and products associated with this lawsuit were performed and supplied in Greenville, Mississippi.

117.   The applicable building codes, regulations and/or ordinances adopted in Greenville and the State of Mississippi required all of Advanced Roofing's work, services and products performed and supplied herein to conform and comply with all applicable codes, including, without limitation, the 1997 SBC and the 2003 IBC.

118.   Advanced Roofing violated the requirements of the 1997 SBC; specifically, the sections of the 1997 SBC cited in paragraphs 50, 51, 52, and 53 above.

119.   Advanced Roofing also violated the requirements of the 2003 IBC; specifically, the sections of the 2003 IBC cited in paragraphs 54 and 55 above.

120.   Harlow's Casino is within the class of persons and entities protected by the 1997 SBC and the 2003 IBC.

121.   The type of harm suffered by Harlow's Casino is the type of harm sought to be prevented by the 1997 SBC and the 2003 IBC.

122.   Advanced Roofing's violation of the 1997 SBC and the 2003 IBC proximately caused additional damage to other portions of The Hotel, which had not been damaged by the initial roof failure that occurred on February 24, 2011.

123.   Accordingly, Advanced Roofing is negligent per se without proof of its lack of due care.

**WHEREFORE,** ACE demands that Defendant Advanced Roofing be held negligent per se and that judgment be entered in its favor and against Defendant Advanced Roofing, in an amount to be determined at trial, plus interest, the costs of this action, and any and all further relief which this Court deems just and proper under the circumstances.

## COUNT VII – BREACH OF CONTRACT AGAINST ADVANCED ROOFING

124. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 88 of this complaint as if fully set forth at length herein.

125.   At all times relevant to this complaint, there was a valid and enforceable oral contract between Harlow's Casino and Advanced Roofing, pursuant to which Advanced Roofing agreed to repair and replace a new roofing membrane on The Hotel after the initial roof failure that occurred on February 24, 2011.

126.   Pursuant to this contract, Advanced Roofing had an implied duty to perform its roofing work in a skillful, good and workmanlike manner.

- 34 -

127. Advanced Roofing breached its contract with Harlow's Casino by improperly installing the replacement roofing membrane; by failing to make the roofing membrane water tight; and by untimely removing the roofing membrane, thereby allowing additional rain water to enter The Hotel and damage other portions of The Hotel, which had not been damaged by the initial roof failure.

128. As a direct and proximate result of Advanced Roofing's breach of contract, ACE and its insureds have, as of this date, suffered substantial damages and will likely suffer additional damages as a result of Advanced Roofing's breach of contract.

**WHEREFORE,** ACE demands that judgment be entered in its favor and against Defendant Advanced Roofing, in an amount to be determined at trial, plus interest, the costs of this action, and any and all further relief which this Court deems just and proper under the circumstances.

Submitted this 30th day of March, 2012.

/s/ Albert G. Dugan, Jr.
Albert G. Dugan, Jr.
Georgia Bar No. 232122
*Admitted Pro Hac Vice*
David M. Bessho
Georgia Bar No. 055784
*Admitted Pro Hac Vice*
Attorneys for Plaintiffs

COZEN O'CONNOR
SunTrust Plaza, Suite 2200
303 Peachtree Street, N.E.
Atlanta, Georgia  30308
Telephone:  (404) 572-2025
Facsimile:   (404) 572-2199
adugan@cozen.com

**LOCAL COUNSEL:**
Charles S. Tindall, III
Mississippi Bar No. 8223
Heath Douglas
Mississippi Bar No. 102313
Lake Tindall, LLP
P. O. Box 918
Greenville, MS  38702-0918
Telephone:  (662) 378-2121
Facsimile:   (662) 378-2183
ctindalliii@ltindall.com
hdouglas@ltindall.com